UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MARIA AUGUSTA                             :
FAREZ-ESPINOZA                            :
                                          :         08 Civ. 11060 (HB)
                   Petitioner,            :
                                          :         OPINION & ORDER
       -against-                          :
                                          :
JANET NAPOLITANO, Secretary,              :
Department of Homeland Security, and      :
ERIC H. HOLDER, Attorney                  :
General of the United States,             :
                                          :
                   Respondents.           :
-------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       Petitioner Maria Augusta Farez-Espinoza ("Farez-Espinoza") filed a petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2241 on December 1, 2008 against Secretary of the Department of Homeland Security ("DHS") Michael Chertoff and the United States Attorney General Michael Mukasey (collectively, "Respondents" or "Government")[1] challenging her detention by DHS on both statutory and constitutional grounds. In an Opinion and Order dated January 28, 2009, this Court found that DHS lacked statutory authority to detain Petitioner and granted the petition, ordering that Petitioner be given supervised release in accordance with the Department's usual practice (the "January 28 Order"). *See Farez-Espinoza v. Chertoff*, 08 Civ. 11060 (HB), 2009 WL 195937 (S.D.N.Y. Jan. 28, 2009). The January 28 Order also resolved various procedural issues disputed by the Government – to wit, it held that (1) this Court had jurisdiction over the petition; (2) Respondents were properly named in the petition; and (3) venue was proper in this District. On February 12, 2009, the Government filed the instant Motion for Reconsideration pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 6.3") seeking vacatur of the January 28 Order and dismissal of the petition as moot. For the reasons that follow, the Government's motion is denied.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the names of Respondents in the caption of this matter have been replaced with Janet Napolitano and Eric H. Holder, respectively.

## I. BACKGROUND

The facts underlying the *habeas* petition were discussed at length in the January 28 Order, and familiarity therewith is presumed. *See Farez-Espinoza v. Chertoff*, No. 08 Civ. 11060 (HB), 2009 WL 195937, at *1-2 (S.D.N.Y. Jan. 28, 2009) ("*Farez-Espinoza I*"). The facts are repeated here only to the extent they are relevant to the Government's instant motion for reconsideration.

Farez-Espinoza is a citizen of Ecuador and entered the United States on July 27, 2006, on which date she was served with a Notice to Appear alleging that she was removable as an alien present without admission or parole pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Farez-Espinoza appeared before the United States Immigration Court in this district on November 30, 2006 and was scheduled for a removal hearing to take place on July 17, 2007. Farez-Espinoza never received notice of the removal hearing. The Immigration Court entered an Order of Removal on July 19, 2007, a copy of which Farez-Espinoza alleges she never received.

Farez-Espinoza was detained on October 27, 2008 for nonpayment of a $2.00 New York City subway fare and was taken into custody by the New York City Police Department. She was subsequently transferred to the custody of the Bureau of Immigration and Customs Enforcement ("ICE"), whereupon she was transferred several times until she arrived at a detention facility in Bloomsburg, Pennsylvania on December 23, 2008, where she remained until January 27, 2009. In this interim, Farez-Espinoza filed her *habeas* petition seeking "permission to be fingerprinted," to be "entitled to the equal protection of the Constitution and for guidance in accordance with the rules and regulations of the federal court as well as the immigration statutes," and for supervised release.

On January 20, 2009, as directed by the Board of Immigration Appeals, Farez-Espinoza filed a motion to reopen her case before the Immigration Court and a stay of the removal order was issued. The Government opposed the motion to reopen on January 26, 2009. On that same day, Farez-Espinoza's counsel was advised by an ICE representative that bail had been set for Farez-Espinoza's release in the amount of $5,000, and that her custody review had been postponed. The ICE representative also informed counsel for Farez-Espinoza that if ICE detained Farez-Espinoza again in the future, its position was that she would remain within the initial presumptively reasonable six-month period of detention under 8 U.S.C. § 1231.

On January 27, 2009, Farez-Espinoza's family posted bond and she was released from ICE custody. After a conversation with counsel for the Government, counsel for Farez-Espinoza sent a letter via fax to this Court, requesting the Court to keep the case open, and noting that ICE claimed

2

to retain the authority to detain Farez-Espinoza at its discretion, and that if it did so, its position was that it remained within the initial presumptively reasonable six-month detention period allowed under the U.S. Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  On January 28, 2009, this Court issued its Opinion and Order granting Farez-Espinoza's petition.  On January 29, 2009, the Immigration Court granted Farez-Espinoza's motion to reopen her immigration case and rescinded the removal order against her.

## II.  DISCUSSION

**A.     Timeliness of the Government's Motion**

Although not raised by Petitioner in opposition to the Government's motion, the Court notes that, insofar as the motion is predicated on Local Rule 6.3 and Federal Rule 59, it is untimely.  Motions for reconsideration "shall be served within ten (10) days after the docketing of the court's determination of the original motion."  Local Rule 6.3.  There is authority among the district courts in this Circuit that the timely filing of a motion pursuant to Local Rule 6.3 is a sufficient basis for denial of the motion.  *See, e.g.*, *Fears v. Wilhelmina Model Agency, Inc.*, 02 Civ. 4911 (HB), 2005 U.S. Dist. LEXIS 10764, at *8 (S.D.N.Y. June 6, 2005) ("If a motion for reconsideration is filed 'after the ten day window permitted under Local Rule 6.3 . . . Plaintiffs' motion could be denied on this basis alone.'") (quoting *American Hotel Int'l Group Inc. v. OneBeacon Ins. Co.*, 01 Civ. 654, 2005 U.S. Dist. LEXIS 9420 (S.D.N.Y. May 18, 2005)); *see also Gibson v. Wise*, 331 F. Supp. 2d 168, 169 (E.D.N.Y. 2004) (denying motion for consideration as untimely); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (same).  The same filing deadline applies to motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 401 (2d Cir. 2000).  The ten-day period is calculated pursuant to Rule 6(a) of the Federal Rules of Civil Procedure by counting business days, excluding weekends and holidays.  *See Licthenberg*, 204 F.3d at 401; *Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372, 374 n.3 (S.D.N.Y. 2007); *Fears*, 2005 U.S. Dist. LEXIST 10764 at *8.  Here, the Court's opinion that is the subject of the Government's motion was issued and docketed on January 28, 2009; ten business days from that date would have been February 11, 2009.  The Government filed the instant motion on February 12, 2009, one day after the deadline.[2]  Therefore, the motion is technically untimely under Rule 59 and Local Rule 6.3.

---

[2] The Government's motion is dated February 12, 2009, and the docket for this matter reflects that the

Motions for reconsideration that are filed outside the ten-day period under Rule 59 and Local Rule 6.3 are treated as motions made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *Miller v. Norton*, 04-CV-3223(CBA), 2008 U.S. Dist. LEXIS 34688, at *3 (E.D.N.Y. Apr. 28, 2008); *Cioce v. County of Westchester*, 03 Cv. 6794 (CLB), 2006 U.S. Dist. LEXIS 24768, at *3 (S.D.N.Y. Mar. 14, 2006), *aff'd*, 211 Fed. Appx. 18 (2d Cir. 2006) ("A motion to reconsider is to be treated as a Rule 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter.") (quoting *United States v. Clark*, 984 F.2d 31, 32 (2d Cir. 1993)). Motions made pursuant to Rule 60(b) must be made either within one year or a "reasonable time," depending on the subsection of the Rule under which the motion is made. *See "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123-24 & n.6 (2d Cir. 2008). Although the Government does not specify which subsection of Rule 60 governs its motion, it is clear that the motion is timely under either approach.

Overlooking the procedural deficiency of the Government's motion under Federal Rule 59 and Local Rule 6.3, and in light of its timeliness under Federal Rule 60 and in the interest of deciding matters on their merits as directed by the Federal Rules, I will proceed to consider the merits of the Government's motion.

**B.    Merits of the Motion for Reconsideration**

*1. Legal Standard*

The standards governing motions to alter or amend a judgment under Rule 59(e) and motions for reconsideration or reargument under Local Rule 6.3 are identical. *See Henderson*, 502 F. Supp. 2d at 376. Such a motion is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000). The Rules must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003). The purpose of this restrictive application of the Rules is, among other things, "to ensure the finality of decisions."

---

Government attempted to file its motion electronically through this Court's Electronic Case Filing ("ECF") System on that date. However, as this matter is not designated as an ECF case, the motion was not properly filed on that day, and was filed by hand on the following day, February 13, 2009. Because February 12, 2009 was a court holiday, and because the Government attempted in good faith to file its motion on that day, I consider that the motion was filed only one day late.

*Schrader*, 70 F.3d at 257; *see also In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (noting that reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.").

Rule 60(b), on the other hand, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is limited, and a court may vacate or modify an order for reasons enumerated in the rule: mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; fraud, misrepresentation or other misconduct; judgment is void; judgment is satisfied, released or discharged; or any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b); *see also Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004) (requiring that Rule 60(b) motions be "predicated on one of five narrow and specific grounds or on a sixth ground, which, despite its open wording, has been narrowly cabined by the precedent of this [Circuit]"); *see also Miller*, 2008 U.S. Dist. LEXIS 34688 at *3-4. The Second Circuit has instructed that the Rule 60(b) standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Thus, it is well-settled that Rule 60(b)(6) relief is granted only in cases involving "extraordinary circumstances, or extreme hardship." *Harris*, 367 F.3d at 81 (internal quotation marks and citation omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (finding "final judgments should not be lightly reopened"). The burden of proof on a Rule 60(b) motion is on the party seeking relief from the earlier judgment or order – in this case, the Government. *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (citations omitted). The decision whether to grant a motion for reconsideration under Local Rule 6.3 and Federal Rule 59(e) or a motion under Rule 60(b) lies in the sound discretion of the district court. *E.g.*, *Bennett v. Watson Wyatt & Co.*, 156 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2001).

### 2. *Farez-Espinoza's Release Did Not Render Her Petition Moot*

The Government argues that the January 28 Order must be vacated because when Farez-Espinoza was released from ICE custody on January 27, 2009, her *habeas* petition was rendered moot. In other words, the Government contends that because Farez-Espinoza's petition sought relief in the form of release from custody, when she was granted such release voluntarily by the Government, her petition no longer presented a live case or controversy on which this Court could render a decision. Farez-Espinoza argues in opposition that her release on bond falls within

recognized exceptions to the mootness doctrine because when it released her, the Government relied on statutory authority under which it reserved the authority to re-detain Petitioner at any time.

Under Article III of the Constitution, federal courts only have jurisdiction over matters that present live "Cases" or "Controversies." *ABC Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004). "In general, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Thus, "under the mootness doctrine, 'if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party,' [the court] must dismiss the case, rather than issue an advisory opinion." *ABC, Inc.*, 360 F.3d at 97 (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

However, the Supreme Court has recognized certain exceptions to the mootness doctrine. For example, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted). Were it otherwise, "courts would be compelled to leave the defendant free to return to his old ways." *Id.* Thus, where a case would otherwise be rendered moot by virtue of the defendant's voluntary cessation of the challenged conduct, the defendant must show that "subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (emphasis added); *see also Seidemann v. Bowen*, 499 F.3d 119, 128 (2d Cir. 2007); *Building & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 151 (2d Cir. 2006). This responsibility on the part of the defendant to overcome the exception to the mootness doctrine has been characterized as "stringent" and a "formidable burden." *Friends of the Earth*, 528 U.S. at 189-90; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106 (2d Cir. 1989) (internal quotation marks and citations omitted). A general disclaimer of intent to revive the allegedly unlawful conduct is insufficient in itself to overcome the defendant's heavy burden. *R.C. Bigelow*, 867 F.2d at 106. Rather, defendants have been found to satisfy their burden by, for example, submitting a sworn affidavit disavowing any intent to ever repeat the challenged conduct. *See, e.g.*, *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (declaration of director of Los Angeles district office of INS swearing to statement that *habeas* petitioner would continue to be paroled and would not be re-detained absent his reinvolvement with criminal justice system); *see also Lane v. Williams*, 455 U.S. 624, 629 n.8

6

(1982) (*habeas* petition found moot upon State's representation in its brief that petitioner had been "totally discharged," and upon Court's "understanding that the State may not subject [petitioner] to any further detention or restraint").

Another recognized exception to the mootness doctrine is applicable where the dispute is "capable of repetition, yet evading review."  A case falls within this exception "where (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *Davis v. Federal Elec. Comm'n*, 128 S.Ct. 2759, 2769 (2008); *ABC, Inc.*, 360 F.3d at 97 (alterations and citation omitted).  A dispute evades review "if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court."  *Russman v. Board of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 119 (2d Cir. 2001).  In analyzing whether a matter is capable of repetition yet evading review, courts have considered whether the conflict at issue in the case is a matter of public concern that ought, in the public interest, be decided.  *See, e.g.*, *Sherman v. United States Parole Comm'n*, 502 F.3d 869, 872 (9th Cir. 2007) (case fell within "capable of repetition yet evading review" exception in part because the issue was "an issue of continuing and public importance"); *R.C. Bigelow*, 867 F.2d at 107 ("[B]ecause of the significant public interest involved in having the legality of the practices challenged in this case finally settled, we conclude that the case is not moot. . . .") (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *In re Ballay*, 482 F.2d 648, 651 (D.C. Cir. 1973).  However, this exception has been found to be "severely circumscribed" and applies "only in exceptional situations."  *Id.*

Although the Government in this case appears almost to argue that there is all but a categorical rule rendering *habeas corpus* petitions moot when the prisoner is released, to the contrary, numerous cases have acknowledged that, even where a prisoner's release would otherwise render a petition moot, the inquiry nonetheless is subject to potentially applicable exceptions to the mootness doctrine.  *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also Levine v. Apker*, 455 F.3d 71, 77 (2d Cir. 2006) (finding *habeas* petition was not moot where petitioner's supervised release left open possibility of court's issuance of effectual relief); *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (finding *habeas* petition "is not necessarily mooted when the petitioner is released . . . , as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist").  Indeed, as the Tenth Circuit has acknowledged, "the fact that [a petitioner] is no longer in custody does not

7

automatically moot [the] petition," and the inquiry becomes whether the case falls within one of the accepted exceptions to the mootness doctrine. *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002). Thus, a court should not dismiss a *habeas* petition as moot if "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable or repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Id.* (quoting *Chong v. District Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001)); *see also, e.g.*, *Vaupel v. Ortiz*, 244 Fed. Appx. 892, 896 (10th Cir. 2007) (discussing exceptions to mootness doctrine; finding none applicable); *Qassim v. Bush*, 466 F.3d 1073, 1075-76 (D.C. Cir. 2006) (discussing voluntary cessation exception); *Kiaz-Holguin v. Keisler*, 08-cv-00460-REB-MJW, 2009 U.S. Dist. LEXIS 17807, at *12-14 (D. Col. Feb. 25, 2009) (discussing exceptions to mootness doctrine; finding none applicable); *Hansley v. Ryan*, 482 F. Supp. 2d 383, 386 n.3 (D. Del. 2007) (same).

   The Government cites to a litany of cases from jurisdictions across the country in which courts have found that the release of a prisoner who challenged only the length of his or her custody mooted the prisoner's *habeas* petition. To be sure, in the appropriate case, the conclusion that a petition is moot may indeed be correct. Yet, courts have also found opportunity to apply the mootness exceptions to reach the conclusion that a *habeas* petition is not moot merely because the prisoner had been released. *See, e.g.*, *Rastelli v. Warden, Metro. Corr. Ctr.*, 782 F.2d 17, 20 (2d Cir. 1986) (applying capable-of-repetition exception to *habeas* petition); *Gonzales v. I.N.S.*, 01 Civ. 6229, 2002 U.S. Dist. LEXIS 21148, at *16-17 (S.D.N.Y. Oct. 31, 2002) (Baer, J.) (*habeas* petition not moot when petitioner was released and deported because deportation includes collateral consequences); *Lesbian/Gay Freedom Day Comm. v. United States I.N.S.*, 541 F. Supp. 569, 576-77 (N.D. Cal. 1982) (same); *Gilroy v. Ferro*, 534 F. Supp. 326, 327 (W.D.N.Y. 1982) (finding that voluntary cessation and capable-of-repetition exceptions applied where Government abruptly and without explanation granted relief requested in *habeas* petition); *see also Padilla v. Hanft*, 547 U.S. 1062, 1964 (2006) (Ginsburg, J., dissenting) (finding that Government's voluntary cessation of challenged conduct should not render *habeas* petition moot); *Armentero v. I.N.S.*, 412 F.3d 1088, 1093 n.8 (9th Cir. 2005) (Berzon, J., dissenting) (finding *habeas* petition was not moot where Government's position on the merits that it had authority to re-detain petitioner "at any time for almost any reason" had not changed); *Riley*, 310 F.3d at 1257 (finding *habeas* petition moot where, although exception for voluntary cessation arguably applied, record provided inadequate development and support of the issue)

8

For example, in *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003), the court found that although the petitioner was no longer being detained, his *habeas* petition was not moot where "his immigration parole can be revoked by the INS at any time for almost any reason." *Id.* at 395. Thus, the court characterized his release not as a termination of detention, but rather merely a reprieve from detention; as such, the petitioner continued to be "threatened with an actual injury traceable to the defendant," and his appeal was not moot. *Id.* at 396. The *Rosales-Garcia* court found that the recognized exceptions of voluntary cessation and "capable of repetition yet evading review" further supported this conclusion. Because the INS maintained the position that it could revoke the petitioner's parole at any time, his release constituted a voluntary cessation of challenged conduct, which the INS had failed to make "absolutely clear" would not recur. *Id.* at 396-97. Further, the court found that because the INS retained the authority to grant parole at any time, any future detention "can always evade review." *Id.* at 397.

Similarly, here, when the Government released Farez-Espinoza on bond, it invoked its authority to do so under 8 U.S.C. § 1226(a). That statute reads in the very next subsection that the Attorney General may revoke such bond "at any time," without qualification, and may then re-detain the alien. 8 U.S.C. § 1226(b). Indeed, in its arguments to this Court on the merits of the petition, the Government maintained that it was "unquestionably permitted to detain [Farez-Espinoza] in any instance," regardless of whether the appropriate statutory authority was found under the Government's pre-removal period detention authority under 8 U.S.C. § 1226, or its post-removal period detention authority under 8 U.S.C § 1231. Moreover, although the Government's stated reason for its decision to release Petitioner on bond was the existence of a stay of her removal pursuant to her motion in the Immigration Court to reopen her immigration proceedings, on the very same day that the Government set the bond, it filed an opposition to her motion to reopen. The denial of that motion would have lifted the stay of removal and would have revived the Government's authority to re-detain Petitioner. Worse yet, ICE's position at the time Petitioner was released was that, if she were to be re-detained, her removal period had begun on the date of her arrest, October 27, 2008. Yet, this Court held in the January 28 Order that the removal began not on October 27, but on July 19, 2007, the date on which her removal order had become administratively final. *See Farez-Espinoza I*, 2009 WL 195937 at *10. Thus, the main thrust of the January 28 Order was that the Government lacked the statutory authority that it claimed to retain to hold Petitioner in custody. Accordingly, without this Court's holding in its

9

January 28 Order, the Government would have acted under its perception that it retained nearly unlimited authority to re-detain Petitioner under the statute.

This fact pattern fits comfortably within the voluntary cessation exception to the mootness doctrine. Even if Farez-Espinoza's *habeas* petition otherwise would have been rendered moot by virtue of her release from ICE custody, under the Government's view, it had full statutory authority to revoke the bond and re-detain her. Thus, absent the Court's January 28 Order, the Government would have been "free to return to [its] old ways." *Friends of the Earth*, 528 U.S. at 189. To be fair, there is no direct evidence in this case that the Government's decision to release Farez-Espinoza was in any way motivated by a strategy to avoid an unfavorable decision of this Court. However, such intent is not a necessary element of the voluntary cessation exception. As noted above, where the Government submits a statement that the petitioner will not be re-detained, release may well render a *habeas* petition moot. *See, Picrin-Peron*, 930 F.2d at 776. Here, the Government has submitted no such statement. In short, the Government has failed to shoulder its "formidable burden" to demonstrate that it is "absolutely clear" that it would not have acted to re-detain Farez-Espinoza. Accordingly, the petition was not rendered moot by Farez-Espinoza's release from ICE custody, and the Government's motion to vacate the January 28 Order is denied.[3]

### III. CONCLUSION

For the foregoing reasons, the Government's motion for reconsideration is DENIED. The Clerk of the Court is instructed to close the case and remove it from my docket.

IT IS SO ORDERED.
April 21 2009

_____
U.S.D.J.

---

[3] As this Court finds that this matter is not rendered moot pursuant to the voluntary cessation doctrine, I need not determine whether the case also falls within the exception for actions that are capable of repetition yet evading review. I also decline to find, as Petitioner argues, that the Government's motion is procedurally improper because it raises arguments that it failed to argue while the petition was pending. Due to the short time frame between the time Petitioner was released and the January 28 Order was issued, I do not find that the Government has procedurally waived its argument on this motion.